# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY MARK ROBERTS, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-01612 |
| v. | (SAPORITO, M.J.) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## **MEMORANDUM**

In this matter, the plaintiff, Jeffrey Mark Roberts, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.  BACKGROUND

On February 10, 2017, Roberts protectively filed an application for supplemental security income, asserting a disability onset date of January 1, 2017. His claim was initially denied by state agency reviewers on July 21, 2017. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on October 9, 2018, before an administrative law judge, Michelle Wolfe (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Josephine A. Doherty. The plaintiff was represented by counsel at the hearing.

On March 26, 2019, the ALJ denied Roberts's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in evaluating whether Roberts was disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). But, because there was medical evidence that the claimant suffered from drug addiction or alcoholism ("DAA"), the ALJ was also required to make an additional determination of whether his DAA was a contributing factor material to the determination that he

was disabled—that is, whether he would still be disabled if he stopped abusing drugs or alcohol. *See generally* 42 U.S.C. § 1382c(a)(3)(J) (providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"); 20 C.F.R. § 416.935 (implementing this statute); Soc. Sec. Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013) (interpreting this regulation), *amended by* 2013 WL 1221979 (Mar. 22, 2013) (correcting typographical errors); *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 389 (M.D. Pa. 2015) (describing the DAA materiality determination evaluation process).

At step one, the ALJ found that Roberts had not engaged in substantial gainful activity since his application date. At step two, the ALJ found that Roberts had the severe impairments of: attention deficit hyperactivity disorder; bipolar disorder; depression; opioid abuse; amphetamine use disorder; methamphetamine abuse disorder; cannabis use disorder; benzodiazepine use disorder; psychotic disorder; schizoaffective disorder; generalized anxiety disorder; anxiety; and schizophrenia.

At step three, the ALJ found that, including his substance use disorders, Roberts had an impairment or combination of impairments that met listing 12.04 (depressive, bipolar and related disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Roberts's limitations in four broad functional areas as a result of his mental disorders, finding marked limitations in two functional areas—(1) interacting with others, and (2) adapting or managing oneself—and moderate limitations in the two remaining functional areas—(a) understanding, remembering, or applying information, and (b) concentrating, persisting, or maintaining pace. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining the process for using paragraph B criteria to evaluate mental impairments).

The ALJ then re-considered the step three criteria, this time evaluating whether Roberts would still be found disabled at step three if he stopped abusing drugs or alcohol. The ALJ found that, if he stopped abusing drugs and alcohol, Roberts would not have an impairment or

combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] The ALJ considered Roberts's limitations in four broad functional areas as a result of his mental disorders, assuming cessation of any drug or alcohol abuse, finding moderate limitations in all four functional areas.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Roberts's residual functional capacity ("RFC"), assuming the cessation of any drug or alcohol abuse. *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Roberts had the RFC to perform the full range of work at all exertional levels, as defined in 20 C.F.R. § 416.967, with the following non-exertional limitations:

> [H]e would be limited to simple routine tasks, no complex tasks in a low stress work environment defined as occasional decision making and occasional changes in work setting, occasional interaction with supervisors and coworkers, but no team setting work

---

[2] We note that, in this analysis, the ALJ expressly referenced listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). Curiously, the ALJ did not reference listing 12.04 at all. Regardless, her analysis exclusively addressed whether Roberts's mental impairments met or equaled the "paragraph B" criteria, which are identical for all four of these listings.

and no interaction with the public.

(Tr. 20.)

In making these factual findings regarding Roberts's prospective RFC without drug or alcohol abuse, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how she weighed the various medical opinions in the record. *See generally* 20 C.F.R. § 416.927; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, the ALJ found that Roberts had no past relevant work.

At step five, the ALJ concluded that, if he stopped abusing drugs or alcohol, Roberts was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Roberts would be capable of performing the requirements of representative occupations such as: janitor (DOT #381.687-018), hand packager (DOT #920.587-018); or router (DOT #222.587-038).

Based on these findings, the ALJ concluded that DAA was a contributing factor material to the determination of disability because Roberts would not be disabled if he stopped abusing drugs or alcohol. Because DAA was a contributing factor material to the determination of disability, the ALJ concluded that Roberts was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on July 7, 2020, making the ALJ's March 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on September 7, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.  DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See*

*generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Roberts asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate the materiality of the claimant's substance abuse disorder under Social Security Ruling 13-2p; and (2) the ALJ failed to properly incorporate the claimant's marked mental limitations into her RFC finding and the hypothetical question she posed to the vocational expert.[3]

## A. DAA Materiality Evaluation

In 1996, Congress enacted the Contract with America Advancement Act ("CWAA"), which amended the Social Security Act to provide that that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the

---

[3] We note that the plaintiff's second claim of error is coextensive with his first. The ALJ found that Roberts had marked limitations in two areas of mental functioning *with* his substance abuse disorders, but that he would have only moderate limitations if he stopped abusing drugs or alcohol. It is these same marked limitations that form the basis for the claimant's second claim of error. Whatever our disposition of the first claim of error, the second claim of error follows suit.

Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852–53 (1996) (codified at 42 U.S.C. § 423(d)(2)(C) (Title 2 disability insurance benefits) and 42 U.S.C. § 1382c(a)(3)(J) (Title 16 supplemental security income)); *see also* 20 C.F.R. §§ 404.1535, 416.935. The agency subsequently published Social Security Ruling 13-2p, which explained the procedure to be used in determining DAA materiality. Soc. Sec. Ruling 13-2p, 2013 WL 621536. In essence,

> [i]f the ALJ determines that DAA is a medically determinable impairment and that a claimant is disabled considering all of the claimant's medically determinable impairments, the ALJ will apply the sequential evaluation process a second time to determine whether the claimant would continue to be disabled if he stopped using drugs or alcohol.

*Bruce v. Berryhill*, 294 F. Supp. 3d 346, 362 n.13 (E.D. Pa. 2018) (citing Soc. Sec. Ruling 13-2p, 2013 WL 621536, at *2).

While it has not been directly addressed by the Third Circuit, this court and others have repeatedly held that it is the claimant who bears the burden of proving DAA materiality. *See, e.g.*, *Kich v. Colvin*, 218 F. Supp. 3d 342, 353 (M.D. Pa. 2016); *Voorhees*, 215 F. Supp. 3d at 389; *Davis v. Astrue*, 830 F. Supp. 2d 31, 39 (W.D. Pa. 2011); *see also Martin*

*v. Comm'r of Soc. Sec.*, 547 Fed. App'x 153, 156 n.2 (3d Cir. 2013) (declining to resolve which party bears the burden of proof); *McGill v. Comm'r of Soc. Sec.*, 288 Fed. App'x 50, 52 (3d Cir. 2008) (same). Regardless, the ALJ's "materiality finding must be based on medical evidence, and not simply on pure speculation about the effects that drug and alcohol abuse have on a claimant's ability to work." *Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 430 (W.D. Pa. 2010). As the agency itself has recognized, there is no "research data" that can be "use[d] to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." Soc. Sec. Ruling 13-2p, 2013 WL 621536, at *9; *see also Voorhees*, 215 F. Supp. 3d at 390. Although a DAA materiality determination does not require expert psychiatric opinion evidence, the evidence on which it is based must be sufficiently probative to constitute substantial evidence under § 405(g). *See McGill*, 288 Fed. App'x at 53; *Ambrosini*, 727 F. Supp. 2d at 430. "[W]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *McGill*, 288 Fed. App'x at 52; *Voorhees*, 215 F.

Supp. 3d at 390.

In this case, Roberts initially applied for benefits in February 2017.

Roberts was examined by a consultative examining psychologist, Angela Chiodo, Psy.D. on July 12, 2017. In her mental status evaluation report, Dr. Chiodo noted that Roberts had reported cannabis use on a daily basis until 2015, prescription opioids use on a daily basis until 2014, cocaine use until 2012, crystal meth use for a period of time in 2013, and heroin use on a "few" occasions. Notwithstanding this self-reported two-year abstinence from drug abuse, Dr. Chiodo noted in her report that Roberts appeared to have been "high" at the time of his evaluation, exhibiting slurred speech and having trouble keeping his eyes open. Nevertheless, she recorded a diagnosis of: (1) opioid use disorder on maintenance therapy; (2) alcohol use disorder in remission; (3) cannabis use disorder in remission; (4) cocaine use disorder in remission; and (5) methamphetamine use disorder in remission. She did not record any non-DAA mental health impairments. Based on her evaluation, she opined that Roberts had marked limitations in his ability to carry out complex instructions, his ability to make judgments on complex work-related decisions, and his ability to interact appropriately with

supervisors, co-workers, and the public.

A few days later, on July 20, 2017, a non-examining state agency psychological consultant, Frank M. Mrykalo, Ed.D., recorded a psychiatric review technique assessment. In his assessment, based on the claimant's mental health treatment records, including Dr. Chiodo's recent evaluation, Dr. Mrykalo found that, although Roberts had a medically determinable impairment of depressive or bipolar disorder, the impairment was not severe. In support, Dr. Mrykalo opined that Roberts had only moderate limitations in his ability to interact with others and his ability to concentrate, persist, or maintain pace, and mild limitations in his ability to adapt or manage oneself and his ability to understand, remember, or apply information.[4]

Less than a month later, on August 11, 2017, Roberts was admitted

---

[4] We note that the ALJ afforded only "partial weight" to either of these medical opinions. She held that the medical evidence supported greater limitations than those found by either Dr. Chiodo or Dr. Mrykalo, particularly in light of the claimant's subsequent hospitalizations for inpatient psychiatric care. *See generally Compton v. Colvin*, 218 F. Supp. 3d 316, 332 (M.D. Pa. 2016) (holding that an ALJ's RFC determination is not supported by substantial evidence when significant medical findings and events occur after the rendering of a mental health provider's medical opinion upon which the ALJ relied in determining the claimant's mental RFC).

to a psychiatric hospital, The Meadows Psychiatric Center, for inpatient treatment. Roberts had presented to a hospital emergency room complaining of hearing voices and other hallucinations or delusions and admitting to using street drugs. On admission, a psychiatrist recorded a diagnosis of other specified psychotic disorder, rule out substance induced psychosis, amphetamine use disorder, marijuana use disorder, benzodiazepine use disorder, all severe, with a disability level of "severe." Psychiatric staff noted that Roberts reported that, other than a three-year period of incarceration, he had never been clean and sober more than a day or two. After treatment and stabilization, he was discharged to home on August 23, 2017. On discharge, a psychiatrist recorded a diagnosis of other specified psychotic disorder, rule out substance induced psychosis, amphetamine use disorder, marijuana use disorder, benzodiazepine use disorder, all severe, but now with a disability level of "moderate."

About five months later, on January 12, 2018, Roberts was admitted to another psychiatric hospital, First Hospital Wyoming Valley,

for inpatient treatment.[5] Roberts had presented to a hospital emergency room complaining of hallucinations, depression, anxiety, psychomotor agitation, and suicidal ideation. Emergency room staff noted that Roberts had reported using a combination of Adderall, crystal meth, and heroin over the preceding three days. On admission, a psychiatrist recorded a diagnosis of unspecified psychotic disorder, rule-out bipolar-type schizoaffective disorder, and moderate meth use disorder. After treatment and stabilization, Roberts was discharged to home on January 22, 2018. On discharge, a psychiatric physician assistant recorded a diagnosis of bipolar type schizoaffective disorder and severe methamphetamine abuse disorder, with a guarded prognosis.

Based on this and other medical evidence, the ALJ found at step three that Roberts's impairments, including his substance use disorders, met the paragraph "B" criteria of listing 12.04. She found Roberts's impairments caused marked limitations in his ability to interact with others and his ability to adapt or manage oneself.

The ALJ then considered whether Roberts's DAA was a material

---

[5] For the sake of clarity, we note that this hospital is also known as Wilkes-Barre Behavioral Hospital. Most references in the record use the "First Hospital" name, however, so we do too.

contributing factor to this step-three determination. She considered the evidence of record and concluded that Roberts would *not* be disabled at step three if he stopped abusing drugs or alcohol. She found that his impairments, if he stopped abusing drugs or alcohol, would cause no more than moderate limitations in any of the four areas of mental functioning considered under the paragraph "B" criteria.

In making this determination, the ALJ did not identify any discrete periods in which Roberts abstained from using drugs or alcohol, during which his symptoms or limitations improved. *See generally Duvall-Duncan v. Colvin*, Civil Action No. 1:14-CV-17, 2015 WL 1201397, at *13 (M.D. Pa. Mar. 16, 2015) ("The ALJ failed to identify evidence to support periods of substance abuse and sobriety and failed to correlate periods of substance abuse and sobriety with any periods of improvement or deterioration in symptoms."). We note that his representation to Dr. Chiodo that he had not used drugs in the preceding two years was evidently untrue, and the ALJ had expressly recognized as much in her written decision. Just a few weeks later, Roberts admitted to psychiatric staff at The Meadows that he had *never* been clean and sober from more than a couple of days. At the hearing, Roberts testified that "it wasn't

long" after his discharge from The Meadows before he was using "street drugs" again. Less than six months later, in January 2018, he was hospitalized once again at First Hospital following a three-day period of binge drug use.

Nine months later, at his October 2018 hearing, Roberts testified that he had been abstaining from any use of methamphetamines or other "street drugs" since his discharge from First Hospital. This abstention did not include marijuana, however, as he testified that he had smoked marijuana as recently as "a few months" before the hearing.[6] He continued to take a variety of prescribed psychotropic medications, including: Seroquel, 200 milligrams, twice a day; Adderall, 20 milligrams, three times a day; gabapentin, 800 milligrams, four times a day; Prozac, 20 milligrams, twice a day; and Haldol, 2 milligrams, once a day. Notwithstanding this period of partial abstention, Roberts testified that his mental health symptoms had continued, or even gotten worse. Roberts testified that he had continued to regularly experience auditory hallucinations, hearing "voices" as recently as moments before the hearing, while in the bathroom at the hearing location.

---

[6] Roberts also testified that he did not drink alcohol.

The administrative record includes fairly sparse treatment records post-dating Roberts's discharge from First Hospital, which the ALJ cited in support of her DAA materiality determination.[7] On March 21, 2018, Roberts was a no-show for an appointment with his primary care physician, David Perrone, M.D. On April 17, 2018, Dr. Perrone noted diagnoses of ADHD and bipolar disorder and prescribed refills of several psychotropic medications for Roberts because his treating psychiatrist had left practice and he was still waiting for an appointment with a new psychiatrist.

On May 9, 2018, Roberts was again seen by Dr. Perrone, who noted diagnoses of ADHD, bipolar disorder, schizophrenia, and depression. Dr. Perrone noted that Roberts was still "hearing voices" and had been discharged from First Hospital three months prior. Dr. Perrone observed that Roberts presented with "pressured fast speech" and "some flight of ideas." Because Roberts was still waiting for an appointment with his new psychiatrist, Dr. Perrone prescribed refills of his several psychotropic medications.

On May 18, 2018, Roberts was seen by a therapist at Omni Health

_____

[7] These treatment records were referred to as Exhibits 8F and 11F.

Services, Jeffrey Steinberg, MSMD, who prepared an initial outpatient treatment plan to address Roberts's symptoms of anxiety and depression. Steinberg noted diagnoses of generalized anxiety disorder and bipolar disorder. In preparing the plan, Steinberg administered the Beck Depression Inventory and the Beck Anxiety Inventory, the results of which indicated minimal depression and severe anxiety.[8]

On May 24, 2018, Steinberg wrote a letter to inform Dr. Perrone that Roberts was compliant with his weekly therapy appointments at Omni, and to request that Dr. Perrone continue to prescribe medications for Roberts until an upcoming appointment with psychiatrist Lance Dunlop, M.D., scheduled for June 25, 2018.

On June 5, 2018, Roberts was seen by Dr. Perrone, who noted diagnoses of ADHD, bipolar disorder, anxiety, and depression. Dr. Perrone observed that Roberts presented with abnormal affect and abnormal judgment and insight. Dr. Perone prescribed a refill of medications for Roberts.

On June 25, 2018, Roberts appears to have been a no-show for an

---

[8] Roberts scored an "11" on the depression assessment, and a "28" on the anxiety assessment.

appointment with his new psychiatrist.

On July 3, 2018, Roberts was seen by Dr. Perrone, who noted diagnoses of anxiety, depression, bipolar disorder, and ADHD. Dr. Perrone noted that Roberts was still awaiting an appointment with his new psychiatrist at Omni Health Services, currently scheduled for August 9, 2018. On examination, Dr. Perrone observed no psychiatric abnormalities. Dr. Perrone prescribed a refill of medications for Roberts.

On August 2, 2018, Roberts was seen by Dr. Perrone, who noted diagnoses of bipolar disorder, anxiety, ADHD, and depression. On examination, Dr. Perrone observed that Roberts presented as "very anxious, almost agitated." Dr. Perrone prescribed a refill of medications for Roberts.

On August 29, 2018, Roberts was seen by Dr. Perrone, who noted diagnoses of bipolar disorder, anxiety, ADHD, and depression. On examination, Dr. Perrone observed that Roberts presented as "anxious." Dr. Perrone noted that Omni Health still had no psychiatrist for Roberts, and he prescribed a refill of medications.

On August 29, 2018, Roberts was also seen by a therapist at Omni Health Services, Myriam S. Toledo, MA. On examination, Toledo

observed that Roberts was "alert but overly anxious and could not sit still." She noted that Roberts told her this was due to having a new therapist.

On September 25, 2018, Roberts was seen by Dr. Perrone, who noted diagnoses of bipolar disorder, ADHD, anxiety, and depression. Dr. Perrone noted that Roberts had an appointment with a psychiatrist scheduled for the next month, who would take over prescribing medications. He noted also that Roberts was "doing well on medications." On examination, Dr. Perrone observed that Roberts presented with an anxious affect. Dr. Perrone prescribed a refill of medications for Roberts.

Even assuming that this post-hospitalization period constitutes a period of partial abstinence, the evidence concerning Roberts's post-hospitalization mental health and treatment is inconclusive, at best. In light of the post-hospitalization findings of severe anxiety and the claimant's reports of continued auditory hallucinations, and in the absence of any definitive evidence of improvement with respect to the limitations in his mental functioning, this subsequent medical evidence simply does not constitute substantial evidence that Roberts's co-occurring mental disorders had improved, or would improve if he were to

stop using drugs or alcohol.

In articulating her DAA materiality determination, the ALJ referenced additional evidence as well, none of which constitutes substantial evidence that the claimant's co-occurring mental disorders had improved, or would improve if he were to stop using drugs or alcohol altogether.

The ALJ cited Exhibits 6F and 7F, treatment records from his two periods of inpatient hospitalization at The Meadows and First Hospital, but any improvement in the claimant's mental functional abilities during these periods is not probative of his ability to function outside these highly structured treatment settings, where such improvement may well reflect the treatment of his co-occurring mental disorders rather than the cessation of substance abuse. *See* Soc. Sec. Ruling 13-2p, 2013 WL 621536, at *12. As the agency itself has recognized,

> a single hospitalization or other inpatient intervention is not sufficient to establish that DAA is material when there is evidence that a claimant has a disabling co-occurring mental disorder(s). We need evidence from *outside* of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence. In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—

> with or without treatment for DAA—is an indication
> that DAA may not be material even if the claimant is
> discharged in improved condition after each
> intervention.

*Id.* at *13 (footnote omitted and emphasis added).

In addition to the two periods of inpatient hospitalization discussed above, the record reflects multiple other emergency room visits for treatment of mental health crises.[9] The ALJ cited Exhibits 9F and 10F, which document four of these emergency room visits.

On June 11, 2017, Roberts presented at a hospital emergency room for a voluntary psychiatric evaluation, complaining of auditory and tactile hallucinations. He admitted to recent methamphetamine and cocaine use, and he reported that he was off his prescribed medications. Roberts was treated with Haldol, Ativan, Librium, and Seroquel. He was discharged the next morning with prescriptions for Seroquel and Librium, and with instructions to follow up with a therapist.

On July 30, 2017, Roberts presented at the emergency room again for a voluntary psychiatric evaluation, complaining of suicidal ideation and intermittent hallucinations over the preceding week. He admitted to

---

[9] We note that there is also some suggestion of prior periods of hospitalization, years before the instant application for benefits.

recent methamphetamine and marijuana use. Roberts was treated with Subutex, amitriptyline, gabapentin, Seroquel, and Lexapro. A psychiatrist approved him for a voluntary psychiatric admission, but Roberts changed his mind and was discharged the next day with an expectation that he would follow up with his regular mental health provider, Omni, at an upcoming appointment in a few days.

The very next day, August 1, 2017, Roberts presented at the emergency room once again for an *involuntary* psychiatric evaluation.[10] He admitted to recent methamphetamine use, confirmed by a toxicology screen that also revealed recent marijuana use. Roberts appeared to be "quite agitated" and was sedated. He was also treated with Ativan and Haldol. Following examination, a consulting psychiatrist determined that the underlying incident "seems more a domestic dispute" and authorized his discharge the next morning.[11]

On January 10, 2018, Roberts presented at the emergency room for

---

[10] The ALJ's written decision does not appear to reference this August 1/2 emergency room visit at all—perhaps understandably, as the records are adjacent to those documenting his July 30/31 emergency room visit.

[11] Roberts was admitted for inpatient treatment at The Meadows ten days later.

psychiatric evaluation, complaining of auditory and tactile hallucinations and suicidal ideation. He admitted to recent crystal meth, heroin, and Adderall abuse. Roberts was treated with Haldol, Ativan, and Subutex. After evaluation by a psychiatrist, Roberts agreed to a voluntary psychiatric admission. On January 12, 2018, he was transferred and admitted to First Hospital for inpatient psychiatric care.

Although cited by the ALJ in support of her materiality determination, it is unclear how these hospitalizations and emergency room encounters might support her finding that the claimant's co-occurring mental disorders would improve if he were to stop using drugs. As the agency's own policy interpretation has recognized, such a record of multiple hospitalizations and emergency department visits—"with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition." Soc. Sec. Ruling 13-2p, 2013 WL 621536, at *13. The ALJ's written decision reasoned that, *except for these several hospitalizations and emergency room encounters when he was suffering mental health crises*, in each of which active substance abuse was documented, Roberts exhibited only "moderate symptoms and limitations" and he received only "minimal and

conservative mental health treatment." (Tr. 21, 23.) But, as this court and others have recognized, "bipolar disorder is episodic" by its very nature, and it "can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms. . . . But the fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006); *Voorhees*, 215 F. Supp. 3d at 382 n.8 (quoting *Kangail*); *Zuback v. Colvin*, No. 4:14-cv-00602-GBC, 2015 WL 5474846, at *21 (M.D. Pa. Sept. 15, 2015) (same); *Paisley v. Colvin*, Civil Action No. 1:14-cv-1656, 2015 WL 5012463, at *21 (M.D. Pa. Aug. 20, 2015) (same).

Finally, characterizing it as evidence of the claimant's limitations "without substance abuse," the ALJ cited materials that significantly predated both periods of hospitalization and the potential period of partial abstinence that followed. She cited Exhibit 6E, an agency function report form completed by the plaintiff in *April 2017*, four months before his first period of hospitalization at The Meadows, and eight months before his second period of hospitalization at First Hospital and the ensuing potential period of partial abstinence following his discharge

from First Hospital. She cited Exhibit 4F, Dr. Chiodo's *July 2017* mental status evaluation report, completed one month before his first period of hospitalization and six months before his second period of hospitalization and the start of his potential period of partial abstinence. She cited Exhibit 5F, office records from Roberts's treating psychiatrist and therapist for the period of September 2016 through May 2017, all *well* before both periods of hospitalization and the potential period of partial abstinence. None of these materials reflect the plaintiff's symptoms or his functional capacity or limitations in the absence of DAA.

In the absence of any probative evidence or expert opinion that Roberts's mental health symptoms or his mental functional limitations would improve to the point of non-disability if he were to stop using drugs or alcohol, we find that the ALJ's decision is not supported by substantial evidence.

### B. Nature of Remand

We remand this case because the ALJ's decision denying benefits is not supported by substantial evidence. The plaintiff has urged the court to remand this matter to the Commissioner with directions to award benefits. We do not, however, find the evidence *compels* a contrary

determination that the plaintiff is definitively disabled.

"An immediate award of benefits is appropriate only when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini*, 727 F. Supp. 2d at 432 (citing *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)). That standard is not met here. The record does not contain any medical opinions regarding whether Roberts's substance abuse is material to his mental health issues, and there is no other probative evidence with respect to whether his co-occurring mental disorders would subside or improve if he stopped abusing drugs or alcohol. The ALJ has the option to order a consultative examination to address this issue, and Roberts should be afforded an opportunity to supplement the medical evidence to address his contention that his mental disorders would continue to be disabling independent of any drug or alcohol use. *See id.* Moreover, it has been the plaintiff's position in this appeal that the ALJ failed to fully develop this record, in particular because she never explicitly mentioned Social Security Ruling 13-2p nor followed its requirements—a position that is inherently at odds with his request for a remand order directing an award of benefits. *See, e.g.*,

*Strauss v. Berryhill*, No. 4:17-CV-1098, 2018 WL 3388026, at *1 (M.D. Pa. July 12, 2018) (addressing this very same argument).

Accordingly, the matter will be remanded to the Commissioner for further proceedings.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Roberts was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying his application for supplemental security income will be vacated and the case will be remanded for further proceedings consistent with this opinion.

Dated: May 4, 2022                    ***s/Joseph F. Saporito, Jr.***
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge